**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, IOWA CITIZENS FOR COMMUNITY IMPROVEMENT, BAILING OUT BENJI, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., and CENTER FOR FOOD SAFETY | |
| Plaintiffs, | No. 19-CV-00124-JEG-HCA |
| vs. | |
| KIMBERLEY K. REYNOLDS, in her official capacity as Governor of Iowa, TOM MILLER, in his official capacity as Attorney General of Iowa, and DREW SWANSON, in his official capacity as Montgomery County, Iowa County Attorney, | **BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS KIMBERLEY REYNOLDS, TOM MILLER, AND DREW SWANSON** |
| Defendants. | |

Defendants Kimberley Reynolds, Tom Miller, and Drew Swanson (hereafter collectively referred to as "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7, hereby submit the following brief in support of their Motion to Dismiss:

**TABLE OF CONTENTS**

I.    **INTRODUCTION**......................................................................................................2

II.    **LEGAL STANDARD** ............................................................................................4

III.    **ARGUMENT**.........................................................................................................5

     A.    **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE VIOLATES THEIR FIRST AMENDMENT RIGHTS TO FREE SPEECH** ..................................................6

          1.    False Speech that Causes Legally Cognizable Harms or that is Made for the Purposes of Material Gain is not Protected by the First Amendment..........6

2. Plaintiffs have had Mixed Success Challenging Similar Statutes in Other Jurisdictions. ...........................................................................8

     a. *Animal Legal Defense Fund v. Wasden.* .................................9

     b. *Animal Legal Defense Fund v. Herbert.* ..............................11

     c. *Western Watersheds Project v. Michael.* .............................13

3. This Court's Prior Decision Invalidating Iowa's Ag-Fraud Statute is Distinguishable Because Iowa's Ag-Trespass Statute is Narrower. ...............15

4. Using Deception on a Material Matter to Gain Access to or Employment at an Agricultural Production Facility, with an Intent to Harm, Imposes Both a Legally Cognizable Harm and Provides a Material Gain....................16

**B.**   **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE IS OVERBROAD IN VIOLATION OF THE FIRST AMENDMENT**........................................................24

1. Iowa's Ag-Trespass Statute does not Prohibit Protected Speech or Target Expressive Conduct Necessitating First Amendment Protection. ........25

2. Even if the Ag-Trespass Statute Criminalizes Protected, Expressive Conduct, the Statute does not Proscribe a Substantial Amount of Protected Speech in Relation to its Plainly Legitimate Sweep. ......................26

3. Inclusion of the Term "Other Injury" in the Ag-Trespass Statute does not Render the Statute Overbroad. ..........................................................28

**C.**   **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE IS VOID FOR VAGUENESS IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS** ......29

**D.**   **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE IMPOSES VIEWPOINT-BASED DISCRIMINATION IN VIOLATION OF THE FIRST AMENDMENT** .....31

**IV.**   **CONCLUSION** ...........................................................................34

**I.**   **INTRODUCTION**

In 2012, the Iowa Legislature passed H.F. 589, "Agriculture Production Facility Fraud"

("Ag-Fraud"), which was signed by the Governor and codified as Iowa Code section 717A.3A.

The Ag-Fraud statute criminalized: a) obtaining access to an agricultural production facility by false pretenses; and b) making a false statement or representation as part of an application or agreement to be employed at an agricultural production facility, if the person knows the statement to be false, and makes the statement with an intent to commit an act not authorized by the owner of the facility, knowing that the act is not authorized. Iowa Code §§ 717A.3A(1)(a)-(b). Plaintiffs challenged the Ag-Fraud statute, and this Court issued a ruling holding that Iowa's Ag-Fraud statute restricted speech protected by the First Amendment. *See Animal Legal Defense Fund v. Reynolds* (*ALDF I*), 297 F.Supp.3d 901 (S.D. Iowa 2018) (granting, in part, and denying, in part, Defendants' Motion to Dismiss). This Court later held that Iowa's Ag-Fraud statute was unconstitutional under the Speech Clause of the First Amendment and enjoined the State of Iowa ("State") from enforcing it. *See Animal Legal Defense Fund v. Reynolds* (*ALDF I*), 353 F.Supp.3d 812 (S.D. Iowa 2019) (granting summary judgment); 2019 WL 1493717 (Feb. 14, 2019) (granting declaratory and injunctive relief). On February 20, 2019, Defendants filed a notice of appeal with the Eighth Circuit Court of Appeals, where the matter is pending. *See Animal Legal Defense Fund v. Reynolds*, No. 19-1364 (8th Cir. 2019).

After this Court held Iowa's Ag-Fraud statute was unconstitutional, the Iowa Legislature passed S.F. 519, "Agriculture Production Facility Trespass," which was signed by the Governor March 14, 2019, and codified as Iowa Code section 717A.3B. The statute created a new crime of "Agricultural Production Facility Trespass" ("Ag-Trespass"). S.F. 519 took effect immediately upon enactment and criminalizes: a) using deception on a material matter to obtain access to a private agricultural production facility with an intent to harm that facility; or b) using deception on a material matter to obtain employment with a private agricultural production facility with an intent to harm that facility.

3

Plaintiffs are various organizations who allege they are affected by enactment and threatened enforcement of the Ag-Trespass statute.  Plaintiffs are alleging the conduct prohibited by Iowa's Ag-Trespass statute—using deception on a material matter in order to obtain access to or employment with an agricultural production facility, not open to the public, with an intent to harm the facility—prevents the Plaintiffs from undertaking their preferred investigatory method, using deception to gain access to an agricultural production facility in order to surreptitiously record activity within said facility, in violation of their First Amendment right to free speech and their Fourteenth Amendment right to due process.  Specifically, they have asserted the statute is unconstitutionally overbroad, void for vagueness, and imposes content and viewpoint-based discrimination.  Defendants move to dismiss the entire Complaint on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted.  There is no First Amendment protection for the conduct specifically prohibited by Iowa's Ag-Trespass statute, and even if the conduct is protected, the statute is not overbroad or vague and does not impose content or viewpoint-based discrimination.

## II.   **LEGAL STANDARD**

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, threadbare recitals of elements supported by mere conclusory statements— "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "naked assertion[s] devoid of further factual enhancement"—will not suffice.  *Id*. (citing *Twombly*, 550 U.S. at 555, 557).

III.    **ARGUMENT**

Defendants move to dismiss Plaintiffs' Complaint in its entirety for failure to state a

claim upon which relief may be granted.  Each of Plaintiffs' causes of action should be dismissed

because the conduct prohibited by Iowa's Ag-Trespass statute is not protected under the First

Amendment.  The Supreme Court has recognized that false speech that results in a legally

cognizable harm or bestows a material gain falls outside the protections of the First Amendment.

The use of deception on a material matter in order to obtain access to or employment with an

agricultural production facility, not open to the public, with an intent to harm the facility or its

interests, imposes a legally cognizable harm and bestows a material gain on the speaker.

Iowa's Ag-Trespass statute is not overbroad or void-for-vagueness in violation of the

First or Fourteenth Amendments.  The statute is not overbroad because it does not proscribe

conduct protected by the First Amendment, and even if it did, any potential overbreadth is not

substantial in relation to its plainly legitimate sweep.  The statute is not void-for-vagueness

because it does not fail to provide a person of ordinary intelligence fair notice of what is

prohibited and does not provide government officials unfettered discretion in its enforcement.

Finally, Iowa's Ag-Trespass statute does not create a viewpoint-based restriction on speech in

violation of the First Amendment because, even assuming the conduct prohibited by Iowa's Ag-

Trespass statute is not exempt from the protections of the First Amendment, the statute is view-

point neutral—it is focused on prohibiting certain conduct of persons, irrespective of the message

or political agenda of those persons.[1]

---

[1]  For purposes of the Motion to Dismiss only, Defendants will not contest Plaintiffs' standing.

A.      **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE VIOLATES THEIR FIRST AMENDMENT RIGHTS TO FREE SPEECH.**

1.   <u>False Speech that Causes Legally Cognizable Harms or that is Made for the Purposes of Material Gain is not Protected by the First Amendment.</u>

Jurisprudence on the application of the First Amendment to certain undercover investigations demonstrates there is no First Amendment protection for the conduct specifically prohibited by Iowa's Ag-Trespass statute.  The Supreme Court recently addressed whether certain fraudulent speech falls outside the First Amendment's protections, such that the speech can be criminalized.  *See United States v. Alvarez*, 567 U.S. 709 (2012) (invalidating the Stolen Valor Act—which made it a crime to lie about receiving military decorations or medals—under the First Amendment on the grounds that it criminalized false speech and nothing more).  In *Alvarez*, the Supreme Court held that the government may criminalize false statements when the statements cause a "legally cognizable harm" such as "an invasion of privacy," *id*. at 719, or "[w]here false claims are made to effect a fraud or secure moneys or other valuable considerations, say *offers of employment*, it is well established that the Government may restrict speech without affronting the First Amendment."  *Id*. at 723 (emphasis added).

Prior to *Alvarez*, the Supreme Court, rejecting defendants' First Amendment defense, upheld a complaint by the Illinois Attorney General alleging a telemarketing company fraudulently solicited charitable donations from members of the public.  *See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003).  The Court had previously invalidated several attempts by states to prohibit charitable solicitations where a high percentage of the donated funds were spent by companies.  *Id*. at 612-18.  The Court held the Illinois lawsuit was different because it had a "solid core in allegations that hone in on affirmative statements [defendants] made intentionally misleading donors regarding the use of their contributions."  *Id*.

at 620.  The Court noted that a false statement was not sufficient; the Attorney General had to show defendants "made a false representation of a material fact knowing that the representation was false" and that defendants "made the representation with the intent to mislead the listener, and succeeded in doing so."  *Id*.  The Attorney General bore the burden of proof and the showing had to be made by clear and convincing evidence.  *Id*.

The Supreme Court, recognizing the importance of protecting private property, has also long recognized that the First Amendment's protections for speech conducted on private property are not unlimited.  Information gatherers must obey laws of general applicability.  *See Bartnicki v. Vopper*, 532 U.S. 514, 532 n.19 (2001) (stating that the First Amendment does not confer a license on news reporters or their news sources to violate valid criminal laws, even if the violation could result in the discovery of newsworthy information); *Hudgens v. NLRB*, 424 U.S. 507, 521 (1976) (stating "[t]he constitutional guarantee of free expression has no part to play" where picketers entered private shopping center to picket a retail store); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972) ("This Court has never held that a trespasser or uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only."); *Branzburg v. Hayes*, 408 U.S. 665, 682-83 (1972) (recognizing "[a journalist] has no special privilege to invade the rights and liberties of others"); *see also State v. Lacey*, 465 N.W.2d 537, 539-40 (Iowa 1991) (court declined to overturn convictions for criminal trespass on First Amendment grounds where defendants were engaged in speech on private property without consent of the owner).

A number of courts have held that the First Amendment does not protect undercover, employment-based investigations, including the use of hidden recording devices, against tort claims.  *See Food Lion, Inc., v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 521 (4th Cir. 1999)

(stating that the First Amendment did not shield reporters from breach of duty of loyalty and trespass claims when the reporters obtained employment at grocery store under false pretenses and surreptitiously recorded store's food handling practices); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (rejecting claim that the First Amendment shielded reporter from invasion of privacy suit when the reporter lied to obtain access and then surreptitiously recorded plaintiff in his home); *accord Sanders v. Am. Broad Cos.*, 978 P.2d 67, 77 (Cal. 1999) (recognizing the covert videotaping of employees of business by journalist posing as an employee violated employees' expectation of privacy); *Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 792-93 (Minn. Ct. App. 1998) (holding that the First Amendment did not shield reporter from a trespass claim when the reporter obtained a volunteer position at a facility for special needs persons and then surreptitiously recorded staffs' care of patients at the facility); *but see Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1352-53 (7th Cir. 1995) (finding no trespass claim from undercover videotaping of physicians in their office, open to the public, by purported patients interested in the physicians' services).

Thus, the state may proscribe false statements that impose a legally cognizable harm or convey a material benefit to the speaker, particularly where the harm or benefit occur on private property, where First Amendment protections are narrower.

2. <u>Plaintiffs have had Mixed Success Challenging Similar Statutes in Other Jurisdictions.</u>

Plaintiffs, or organizations similar to Plaintiffs, have challenged similar Ag-Trespass statutes in Idaho, Utah, and Wyoming, on First Amendment grounds, and courts have rejected Plaintiffs' arguments in several instances.   Where Plaintiffs have been successful, the cases are either factually distinguishable or the court reached a conclusion contrary to the First Amendment jurisprudence on the scope of free speech protections on private property.

a. *Animal Legal Defense Fund v. Wasden*.

Animal Legal Defense Fund ("ALDF"), People for the Ethical Treatment of Animals Inc.

("PETA"), and the Center for Food Safety ("CFS"), among others, challenged Idaho's Ag-

Fraud/Ag-Trespass statute, the relevant portions of which prohibited: a) a non-employee entering

an agricultural production facility by misrepresentation or trespass; b) obtaining records of an

agricultural production facility by misrepresentation or trespass; c) obtaining employment at an

agricultural production facility by misrepresentation or trespass with the intent to cause

economic or other injury to the facility; or d) entering an agricultural production facility that is

not open to the public and, without consent of the owner, making an audio or video recording of

the conduct of the facility's operations.[2] *See* Idaho Code §§ 18-7042(a)-(d).

---

[2] The statute reads as follows:

(1)   A person commits the crime of interference with agricultural production if the person knowingly:

    (a)   Is not employed by an agricultural production facility and enters an agricultural production facility by force, threat, misrepresentation or trespass;

    (b)   Obtains records of an agricultural production facility by force, threat, misrepresentation or trespass;

    (c)   Obtains employment with an agricultural production facility by force, threat, or misrepresentation with the intent to cause economic or other injury to the facility's operations, livestock, crops, owners, personnel, equipment, buildings, premises, business interests or customers;

    (d)   Enters an agricultural production facility that is not open to the public and, without the facility owner's express consent or pursuant to judicial process or statutory authorization, makes audio or video recordings of the conduct of an agricultural production facility's operations; or

    (e)   Intentionally causes physical damage or injury to the agricultural production facility's operations, livestock, crops, personnel, equipment, buildings or premises.

Idaho Code §§ 18-7042(a)-(e).

The Ninth Circuit upheld the statute in part and invalidated the statute in part. *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018). The court, by a 2-1 decision, held that subsection (a)—prohibiting obtaining access by misrepresentations—violated the First Amendment, but unanimously held that subsections (b) and (c)—prohibiting obtaining records or employment, with an intent to harm, by misrepresentations—were <u>not</u> invalid under the First Amendment.[3] *Id*. at 1194-1203.

With respect to subsection (a), the court, relying upon *Alvarez*, 567 U.S. at 722-23, held that "lying to gain entry" does not result in a material gain to the speaker, and therefore, the lie is "pure speech" protected by the First Amendment. *Wasden*, at 878 F.3d at 1194-99. In support of this conclusion, the court provided a hypothetical example of a teenager who lies to obtain a restaurant reservation, noting the teenager has obtained no material gain by lying to obtain the reservation but is still subjected to a criminal penalty under the statute—a troubling result for the majority. *Id*. at 1194-96.

Judge Bea issued a vigorous dissent from this portion of the court's ruling. *Id*. at 1205-13 (Bea, J., dissenting in part and concurring in part). The dissent included a lengthy discussion of Idaho's historic protection of private property rights. *Id*. The dissent also noted that in Idaho, unconsented entry—entry by misrepresentation—constitutes common law trespass, from which "damages are presumed to flow naturally." *Id*. at 1206. The dissent then criticized the majority for brushing aside the longstanding principle that the "right to exclude"—a fundamental element

---

[3] The court also unanimously held that subsection (d)—prohibiting surreptitious audio/video recordings—was an invalid, content-based restriction on speech that could not survive strict scrutiny under the First Amendment because one could only determine criminal liability by viewing the recording. *Wasden*, 878 F.3d at 1203-06.

of property rights—includes the ability to exclude *anyone* from entry, at *any* time, and for *any* reason, or no reason at all.  *Id.* (emphasis added).

Rejecting plaintiffs' arguments that subsections (b) and (c) violated the First Amendment, the court reasoned that obtaining records or employment, with an intent to cause harm, by misrepresentations both inflicts harm upon the property owner and may bestow a material gain on the acquirer.  *Id.* at 1199-1203.  In support of its ruling, the Ninth Circuit relied upon the Supreme Court's statement in *Alvarez* that, "[w]here false claims are made to effect a fraud or secure … offers of employment, it is well established that the Government may restrict speech without affronting the First Amendment" to uphold the prohibition on employment by misrepresentations.  *Id.* at 1201 (quoting *Alvarez*, 567 U.S. at 723).

b.  *Animal Legal Defense Fund v. Herbert.*

ALDF and PETA, among others, challenged Utah's Ag-Fraud/Ag-Trespass statute, the relevant portions of which prohibited: a) leaving a recording device at an agricultural operation without consent; b) obtaining access to an agricultural operation under false pretenses; c) applying for employment at an agricultural operation with the intent to record the operation; or d) recording an agricultural operation while trespassing.[4]  Utah Code §§ 76-6-112(2)(a)-(d).

---

[4]  The statute reads as follows:

(1)   A person is guilty of agricultural operation interference if the person:

(a)    without consent from the owner of the agricultural operation, or the owner's agent, knowingly or intentionally records an image of, or sound from, the agricultural operation by leaving a recording device on the agricultural operation;

(b)    obtains access to an agricultural operation under false pretenses;

(c)    (i) applies for employment at an agricultural operation with the intent to record an image of, or sound from, the agricultural operation;

The court ruled that Utah's Ag-Fraud statute was unconstitutional under the First Amendment's free speech protections. *Animal Legal Defense Fund v. Herbert*, 263 F.Supp.3d 1193, 1213 (D. Utah 2017). The court held that the statute's prohibitions on lying and recording created content-based restrictions on speech under the First Amendment and could not survive strict scrutiny. *Id.* at 1209-13.

The court, relying upon *Alvarez*, *Desnick*, and *Food Lion*, determined that the prohibition on lying was an unconstitutional restriction on free speech because lying to gain access to an agricultural operation, without more, does not result in a trespass-type harm. *Id.* at 1202-06. The court noted that in *Desnick* and *Food Lion*, the appellate courts found that consent to enter private property was not revoked—thereby turning that person into a trespasser—merely because consent would have been withheld if the truth had been known. *Desnick*, 44 F.3d at 1352-53; *Food Lion, Inc.*, 194 F.3d at 518. The court determined that the prohibition on audiovisual recordings was an unconstitutional restriction on free speech because it concerned whether the government can prosecute a person for speech on private property—not whether a private property owner can exclude a person from their property who wishes to speak—and it only targeted certain recordings concerning agricultural operations. *Id.* at 1206-13.

---

(ii) knows, at the time that the person accepts employment at the agricultural operation, that the owner of the agricultural operation prohibits the employee from recording an image of, or sound from, the agricultural operation; or

(iii) while employed at, and while present on, the agricultural operation, records an image of, or sound from, the agricultural operation; or

(d)     without consent from the owner of the operation or the owner's agent, knowingly or intentionally records an image of, or sound from, an agricultural operation while the person is committing criminal trespass, as described in Section 76-6-206, on the agricultural operation.

Utah Code §§ 76-6-112(2)(a)-(d).

c. *Western Watersheds Project v. Michael*.

PETA and CFS, among others, challenged a Wyoming Ag-Fraud/Ag-Trespass-like statute, the relevant portions of which prohibited: a) entering private land with the intent to collect resource data[5]; b) entering private land and actually collecting resource data; or c) crossing private land without authorization to collect resource data on adjacent or proximate public land.[6]  Wyo. Stat. §§ 6-3-414(a)-(c).

---

[5] "Resource data" was defined as "data relating to land or land use, including but not limited to data regarding agriculture, minerals, geology, history, cultural artifacts, archeology, air, water, soil, conservation, habitat, vegetation or animal species."  Wyo. Stat. § 6-3-414(e)(iv).

[6] The statute reads as follows:

(a)    A person is guilty of trespassing to unlawfully collect resource data from private land if he:

    (i)    Enters onto private land for the purpose of collecting resource data; and

    (ii)    Does not have:

        (A)  An ownership interest in the real property or, statutory, contractual or other legal authorization to enter the private land to collect the specified resource data; or

        (B)  Written or verbal permission of the owner, lessee or agent of the owner to enter the private land to collect the specified resource data.

(b)    A person is guilty of unlawfully collecting resource data if he enters onto private land and collects resource data from private land without:

    (i)    An ownership interest in the real property or, statutory, contractual or other legal authorization to enter the private land to collect the specified resource data; or

    (ii)    Written or verbal permission of the owner, lessee or agent of the owner to enter the private land to collect the specified resource data.

(c)    A person is guilty of trespassing to access adjacent or proximate land if he:

    (i)    Crosses private land to access adjacent or proximate land where he collects resource data; and

In *Western Watersheds Project v. Michael*, the court determined that subsections (a) and (b) of the statute did not violate the First Amendment because "there is no First Amendment right to trespass upon private property for the purpose of collecting resource data."  196 F.Supp. 3d at 1242 (*rev'd on other grounds*, 869 F.3d 1189 (10th Cir. 2017)).  The lynchpin of the court's analysis was that, irrespective of the importance of the information sought, the restriction on conduct occurred on private property.  *Id*. at 1241 ("Plaintiffs' desire to access certain information, no matter how important or sacrosanct they believe the information to be, does not compel a private landowner to yield his property rights and right to privacy.")  The court's reasoning carried over to its decision upholding subsection (c), which prohibited resource data collection on public property if one had to cross private property to collect such data.  *Id*. at 1243-44.

On appeal, the Tenth Circuit did not reverse the district court's ruling that the prohibition on resource data collection on private property did not violate the First Amendment.  *Western Watersheds Project*, 869 F.3d at 1193-94.  The Tenth Circuit, noting that Plaintiffs did not appeal the portion of the district court's decision that upheld the prohibition on resource data collection on *private* property, simply held that resource data collection on *public* property constituted speech protected under the First Amendment and remanded the case to the district

---

 (ii)  Does not have:

   (A) An ownership interest in the real property or, statutory, contractual or other legal authorization to cross the private land; or

   (B) Written or verbal permission of the owner, lessee or agent of the owner to cross the private land.

Wyo. Stat. §§ 6-3-414(a)-(c).

court for analysis consistent with that conclusion.  *Id*. at 1193-98 (emphasis added).  Moreover, the Tenth Circuit appears to tacitly accept the district court's conclusion that the prohibition on resource data collection on private property did not violate the First Amendment.  *Id*. at 1194. The Tenth Circuit noted that the district court "relied on Supreme Court precedent holding that individuals generally do not have a First Amendment Right to engage in speech on the private property of others," and then went on to state "[a]lthough subsections (a) and (b) of the statutes govern actions on private property, the district court was mistaken in focusing on these cases with respect to subsection (c)."  *Id*.

### 3.   This Court's Prior Decision Invalidating Iowa's Ag-Fraud Statute is Distinguishable Because Iowa's Ag-Trespass Statute is Narrower.

This Court has previously held that the interests sought to be protected in subsection (a) of Iowa's Ag-Fraud statute—preventing people from invading legitimate property interests— were insufficient to justify excluding lying to gain access to private property from the protections of the First Amendment.  *See ALDF I*, 297 F.Supp.3d at 921-24.  The Court, relying upon *Alvarez*, *Wasden*, and *Herbert*, held that the types of false statements historically unprotected by the First Amendment are those that cause specific or tangible injuries, but a trespasser may enter property unauthorized and interfere with a property owner's right to control access to their property without causing any actual or material injuries.  *ALDF I*, 297 F.Supp.3d at 921-23.

This Court has also previously held that subsection (b) of Iowa's Ag-Fraud statute, prohibiting the use of false pretenses to obtain employment at an agricultural production facility, with an intent to commit an unauthorized act, was not sufficiently narrow to remove the speech from the protections of the First Amendment.  *ALDF I*, 297 F.Supp.3d at 924-25.  The Court reasoned that just because an act is not authorized by an employer, commission of that act may not cause the sort of material harms contemplated in *Alvarez*, and the lack of a requirement that

the false statements be material further distinguishes subsection (b) from a recognized prohibition of fraud.  *Id*. at 924.

Here, although the Defendants have appealed this Court's ruling in *ALDF I*, Iowa's Ag-Trespass statute addresses the alleged deficiencies identified by this Court in *ALDF I*.  The Ag-Trespass statute requires that: any deception be of a material nature; the agricultural production facility must be purely private property, not open to the public; the person using deception must actually obtain access or employment; and the person using deception must also harbor an intent to harm the facility's interests.  *See* Iowa Code § 717A.3B(1)(a) and (b).  The Ag-Trespass statute expressly prohibits the use of false speech this Court recognized as historically excluded from protection by the First Amendment—false statements that impose a legally cognizable harm or confer a material gain.  Just as in *Telemarketing Associates*, where the Attorney General's suit was designed to prevent people from fraudulently inducing people into giving away their money, Iowa's Ag-Trespass statute is aimed at preventing people, who harbor an intent to harm the interests of agricultural production facilities, from using deception on a material matter to gain access to or employment at such facilities in order to do harm.

    4.  <u>Using Deception on a Material Matter to Gain Access to or Employment at an Agricultural Production Facility, with an Intent to Harm, Imposes Both a Legally Cognizable Harm and Provides a Material Gain.</u>

First Amendment jurisprudence on this issue demonstrates that the false statements prohibited by Iowa's Ag-Trespass statute are not protected by the First Amendment because they impose a legally cognizable harm or confer a material gain.  First, false speech made with an intent to cause harm is a category of speech unprotected by the First Amendment.  *See Alvarez*, 567 U.S. at 736) (Breyer, J., concurring) (noting statutes that prohibit false statements but do not run afoul of the First Amendment generally have "limitations of context" and "requirements of

proof of injury," which narrow the statute to a "subset of lies where specific harm is more likely to occur"); *see also Wasden*, 1201-02 (noting Idaho's "intent to harm" element of their Ag-Fraud statute further cabined the statute against a First Amendment challenge).  In *Alvarez*, the Supreme Court specifically identified fraud statutes as an example of restrictions on false speech that do not violate the First Amendment, as they typically require material misrepresentations, reliance on the misrepresentation by the victim, and injury to the victim.[7]  *See Alvarez*, 567 U.S. at 734.

Here, the prohibition in Iowa's Ag-Trespass statute falls squarely in the categories of speech that courts have held are not protected by the First Amendment because the statute requires: 1) deception of a material matter; 2) reliance upon the deception; and 3) injury to the victim—the trespasser must have actually obtained "access" or "employ[ment]" while also

---

[7]  However, actual injury is not required for the conviction of a fraudulent practice in Iowa in some circumstances.  *See State v. McSorely*, 549 N.W.2d 807, 809 (Iowa 1996) (court upheld a second-degree fraudulent practice conviction for falsifying corporate records even where the defendant did not obtain anything of value from the conduct).

harboring an intent to harm.[8],[9]   Iowa Code § 717A.3B(1)(a) and (b).  The intent language in

Iowa's statute is virtually identical to that in Idaho's statute, which the Ninth Circuit upheld, and

this Court has previously recognized as sufficient to remove the speech from the protections of

the First Amendment.  *See Wasden*, 878 F.3d at 1201-02; *ALDF I*, 297 F.Supp.3d at 924-25.

Moreover, Iowa's statute is arguably even more narrow than Idaho's because it requires that any

deception be of a material nature, curing a deficiency in Iowa's Ag-Fraud statute identified by

this Court.  *See* Iowa Code § 717A.3B(1)(a) (requiring the deception be on a "matter that would

reasonably result in a denial of access"); *ALDF I*, 297 F.Supp.3d at 924-25.

---

[8]  Although Iowa's Ag-Trespass statute requires an intent to harm in order to convict, actual harm is not required to maintain a claim for trespass in Iowa. *See Nichols v. City of Evansdale*, 687 N.W.2d 562, 573 (Iowa 2004) (citing 75 Am.Jur.2d Trespass § 117 (1991)) ("From every unlawful entry, or every direct invasion of the person or property of another, the law infers some damage."); *Thunder & Lightning, Inc. v. 435 Grand Avenue, LLC*, 2018 WL 5850219 at 2 (Iowa Ct. App. Nov. 7, 2018) (unpublished opinion) (quoting *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994) (quoting Restatement (Second) of Torts § 158 (1964)), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004)) ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally ... enters land in the possession of the other ...."); *Krotz v. Sattler*, 695 N.W.2d 41, at *3 n. 2, *4 (Iowa Ct. App. Oct. 14, 2004) (unpublished opinion) (court, relying upon *Wing v. Seske*, 109 N.W. 717 (Iowa 1906), stated "trespass can in some situations justify an award of nominal damages") (Vaitheswaran, J., specially concurring) (landowner "entitled to nominal damages without a showing of any harm"); *see also State v. Redmon*, 244 N.W.2d 792, 798 (Iowa 1976) (upholding a conviction for burglary, the Iowa Supreme Court recognized that it was the "intent to commit a public offense at the time of breaking and entering" that formed the basis for the conviction and failure to complete the offense did not negate the burglary).

[9]  Other jurisdictions recognize actionable claims for trespass where the defendant merely crossed the threshold of the plaintiff's private property. *See Council on American-Islamic Relations Action Network, Inc., v. Gaubatz*, 793 F.Supp.2d 311, 344-45 (D.D.C. 2011) (holding trespass claim should not be dismissed even where plaintiffs did not plead damages, noting District of Columbia law allows plaintiffs to recover nominal damages for trespass); *Jacque v. Steenberg Homes, Inc.*, 563 N.W.2d 154, 160-61 (Wisc. 1997) (upholding a substantial award of punitive damages for a trespass that resulted in nominal damages of $1, noting "[t]he law infers some damage from every direct entry upon the land of another."); *Green v. Beaver State Contractors, Inc.*, 472 P.2d 307 (Idaho 1970) (recognizing that using false pretenses to gain entry inflicts a legally cognizable harm, even where the trespasser merely crossed the threshold).

Second, the Ag-Trespass statute's prohibition on obtaining employment by deception is expressly addressed by the Supreme Court in *Alvarez*, where the Court stated the First Amendment does not protect using false claims to obtain "offers of employment." 567 U.S. at 723 ("Where false claims are made to effect a fraud or secure … *offers of employment*, it is well established that the Government may restrict speech without affronting the First Amendment.") (emphasis added); *see also Wasden*, 878 F.3d at 1202 (the court, relying upon the aforementioned language in *Alvarez*, upheld Idaho's prohibition on obtaining employment by misrepresentations where the applicant had the intent to injure the employer). The speech prohibited by Iowa's Ag-Trespass statute confers a material gain because the opportunity for a trespasser or "false friend" employee to harm the agricultural production facility's interests is arguably increased substantially where the trespasser/employee obtains access to or employment with the facility; conversely, denial of access or employment arguably decreases his/her opportunity to harm the property owner's interests.[10]

Third, the Ag-Trespass statute prohibits conduct facilitated by speech, rather than pure speech, which distinguishes the statute from the Stolen Valor Act at issue in *Alvarez*. *See Wasden*, 878 F.3d at 1207 (Bea, J., dissenting in part and concurring in part) (noting Idaho's prohibition on obtaining access by misrepresentation "no more regulates pure speech than do

---

[10]  Moreover, Iowa's law simply codifies the common law "duty of loyalty" implied in employment relationships, which provides that a "servant must do nothing hostile to the master's interest." *Condon Auto Sales & Services, Inc. v. Crick*, 604 N.W.2d 587, 599 (Iowa 1999) (citing *LaFontaine v. Developers & Builders, Inc.*, 156 N.W.2d 651, 658 (Iowa 1968)). Although this Court previously noted that the Iowa Supreme Court has cautioned actions based upon the duty of loyalty must be limited in scope (*ALDF I*, 353 F.Supp.3d at 826 (citing *Condon*, 604 N.W.2d at 600)), lying to obtain employment at an agricultural production facility while simultaneously harboring the specific intent to harm the employer arguably qualifies as "hostile to the master's interest."

prohibitions on larceny by trick or false pretenses.")[11]  The Stolen Valor Act did not prohibit

obtaining access to or employment at a private facility, with an intent to harm the facility, by

lying about receiving a military award; it simply prohibited lying about receipt of an award.  *See*

*Alvarez*, 567 U.S. at 719.  In contrast, the action in *Telemarketing Associations* proscribed

misrepresentations only when they were intentional and accompanied by specific conduct—

misleading the listener about the use of his/her donations.  538 U.S. at 620.  Here, the harm

arises when one uses deception to enter a private facility or obtain employment at said facility,

with an intent to injure the facility's interests.  Consequently, unlike the Stolen Valor Act, Iowa's

prohibitions on access or employment by deception, with an intent to harm, does not target

"falsity and nothing more."  *Cf. Wasden*, 878 F.3d at 1196 (citing *Alvarez*, 567 U.S. at 719).

Fourth, First Amendment protections are at their "most attenuated when the forum is

private property, because the rights of the property owner and his invitees are brought into play."

*Cincinnati v. Thompson*, 643 N.E.2d 1157, 1163 (Ohio Ct. App. 1994) (citing *Lloyd Corp.*, 407

U.S. at 567) (upholding convictions of abortion protesters for violating municipal ordinance that

prohibited trespass "on the land or premises of a medical facility," and rejecting claims that the

First Amendment protected their speech).  Federal courts have recognized this principle in cases

similar to the present matter.  The District Court in *Western Watersheds Project* rejected

plaintiffs' claim that the First Amendment allowed someone to trespass on private property to

engage in data collection (speech), 196 F. Supp. 3d at 1242 (*rev'd on other grounds*, 869 F.3d

---

[11]  In a similar context, the Iowa legislature has criminalized conduct that is facilitated by false speech, defining a "fraudulent practice" as: soliciting money and holding oneself out as a member of a fraternal, religious, charitable, or veterans' organization, among others, Iowa Code section 714.8(6); and soliciting money by "deception" primarily by telephone and involving claims that someone has won a prize.  Iowa Code § 714.8(15).  "Fraudulent practice" is essentially theft by use of false speech.

1189 (10th Cir. 2017), and the Tenth Circuit tacitly accepted this determination. *Western Watersheds Project*, 869 F.3d at 1193-94.

The protection of private property has long been recognized in Iowa and was deemed so important and fundamental to the founders of the State of Iowa, that the right is enshrined in Iowa's Constitution. *See* Iowa Const. art. I, § 1 (identifying the inalienable right to acquire, possess, and protect property). Moreover, the Iowa Supreme Court has recognized in some instances that an Iowan's property rights warrant more protection under the Iowa Constitution than under the Federal Constitution. *See State v. Short,* 851 N.W.2d 474, 506 (Iowa 2014) (recognizing the warrant requirement has full applicability to home searches of both probationers and parolees, in disagreement with United States Supreme Court precedent); *State v. Ochoa*, 792 N.W.2d 260, 291 (Iowa 2010) (rejecting the United States Supreme Court case of *Samson v. California*, 547 U.S. 843 (2006), and concluding that the Iowa Constitution does not permit a warrantless search of a parolee's property).

In order to properly protect private property, particularly where a trespasser intends to harm the property owners' interests, the right to exclude others must be recognized. *Dolan v. City of Tigard*, 512 U.S. 374, 393 (1994) (quoting *Kaiser Aetna v. U.S.*, 444 U.S. 164, 176 (1979)) (The right to exclude others is "'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'") The Iowa Supreme Court has recognized the importance of the "right to exclude others" in a case that presented a direct conflict between the right to free speech and a property owner's right to exclude under Iowa's criminal trespass law. In *State v. Lacey*, defendants refused to leave a steakhouse after distributing union-related handbills that urged customers to boycott the restaurant. 465 N.W.2d 537, 538 (Iowa 1991). The Iowa Supreme Court rejected the defendants' argument that their activities were a

reasonable exercise of free speech.  *Id.* at 540.  "The Constitution does not protect against a private party who seeks to abridge free expression of others on private property." *Id.* at 539.

The application of this principle to instances of undercover investigations has demonstrated that the closer a person gets to obtaining access or employment by deception to purely private property—not open to the public—the more likely the First Amendment does not apply.  *Food Lion*, 194 F.3d at 518-19 (recognizing that defendants did not commit trespass when they obtained employment based upon misrepresentations, but they did commit trespass by breaching their duty of loyalty to plaintiff when they secretly filmed non-public areas of the store because such filming went beyond their authority to enter the store as employees); *Desnick*, 44 F.3d at 1352-1353 (holding that the First Amendment protected defendants' use of false pretenses to conduct undercover recordings of plaintiff's business activities where the recordings were conducted in the portion of the office that was open to the public); *Dietemann*, 449 F.2d at 248 (determining that the First Amendment did not protect defendants where they obtained access to the plaintiff's home—where plaintiff was operating his business—under false pretenses and secretly recorded plaintiff).

Several recent decisions by federal district courts have recognized the potential for harm from a trespass where the entrant obtained "consent" to gain access or employment at private property through misrepresentations, or where persons conducted surreptitious recordings, exceeding the scope of said consent.  *See Democracy Partners v. Project Veritas Action Fund*, 285 F.Supp.3d 109 (D.D.C. 2018); *Planned Parenthood Federation of America, Inc., v. Center for medical Progress*, 214 F.Supp.3d 808 (N.D. Cal. 2016); *Gaubatz*, 793 F.Supp.2d 311.  In all three cases, plaintiffs brought trespass causes of action, among others, against defendants who had obtained internships with plaintiffs through misrepresentations and then surreptitiously

recorded numerous conversations and/or released a number of confidential documents. *Democracy Partners*, 285 F.Supp.3d at 112-15; *Planned Parenthood*, 214 F.Supp.3d at 817-19; *Gaubatz*, 793 F.Supp.2d at 317-20.  The courts rejected defendants' arguments that the trespass claims should be dismissed because the plaintiffs consented to the entry, as the consent was obtained through misrepresentations, and in any event, the defendants exceeded the scope of said consent by surreptitiously recording conversations in plaintiffs' offices or private spaces. *Democracy Partners*, 285 F.Supp.3d at 118-19; *Planned Parenthood*, 214 F.Supp.3d at 833-35; *Gaubatz*, 793 F.Supp.2d at 344-46.  Moreover, the potential for harm is even greater where consent is obtained by deception and the trespasser harbors an intent to harm the property owner's interests.

Here, using deception on a material matter in order to obtain access to or employment at an agricultural production facility, not open to the public, with an intent to harm the facility imposes a legally cognizable harm or confers a material gain such that the protections afforded under the First Amendment do not apply.  Accordingly, Iowa's Ag-Trespass statute does not violate the First Amendment.[12,13]

---

[12]  Should this Court uphold only one subsection of Iowa's Ag-Trespass statute, the Court "may sever the offending portions from the [statute] and leave the remainder intact."  *Bonilla v. State*, 791 N.W.2d 697, 702 (Iowa 2010); *see* Iowa Code § 4.12 (recognizing severability as applicable to all Iowa Acts or statutes).

[13]  Plaintiffs also raised a Fourteenth Amendment due process argument in Count IV, alleging that the Ag-Trespass statute burdens a fundamental right—speech protected by the First Amendment.  Complaint ¶¶ 147-151.  Plaintiffs' due process claim should be dismissed because the Ag-Trespass statute does not burden speech protected by the First Amendment.  *See* Section A of this Brief, pp. 6-23.

**B.**     **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE IS OVERBROAD IN VIOLATION OF THE FIRST AMENDMENT.**

Iowa's Ag-Trespass statute is not overbroad in violation of the First Amendment because it does not burden substantially more speech than the First Amendment permits. The United States Supreme Court has held that a statute is facially overbroad

> if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional— particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is strong medicine that is not to be casually employed.

*U.S. v. Williams*, 553 U.S. 285, 292-93 (2008) (internal citations and quotation marks).  Plaintiffs bear the burden of demonstrating substantial overbreadth exists.  *New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 14 (1988).

Plaintiffs concede that Iowa's Ag-Trespass statute has some legitimate applications but argue that it reaches "a substantial amount of constitutionally protected speech, such as the undercover investigations the Plaintiffs conduct and/or rely upon as well as similar types of speech-producing conduct by labor organizers, journalists, and others engaged in such investigations."  Complaint ¶ 122.  Plaintiffs identify union workers seeking to organize a workforce or a person conducting an investigation because they are concerned about the conditions under which food is processed as examples of alleged speech criminalized by the Ag-Trespass statute as support for their overbreadth claim.  *Id*. at ¶ 126.

1.  <u>Iowa's Ag-Trespass Statute does not Prohibit Protected Speech or Target
    Expressive Conduct Necessitating First Amendment Protection.</u>

First, as previously discussed in this Brief, to the extent an investigative journalist, or anyone else for that matter, uses deception to obtain access to or employment with an agricultural production facility that is purely private, and not open to the public, with the specific intent to cause physical, economic, or other injury to the facility's interests, that conduct does not fall within the protections of the First Amendment.  *See also Wasden*, 878 F.3d at 1201-03 (holding in part that Idaho may criminalize similar "employment-seeking misrepresentations" used to gain access to an agricultural production facility with an intent to harm without violating the First Amendment).  Therefore, Plaintiffs cannot rely upon said conduct as an example of "protected speech" to support their overbreadth argument.  *See Johnson v. Quattlebaum*, 664 Fed.Appx. 290, 293 (4th Cir. 2016) (unpublished decision) (court held South Carolina's public disorderly conduct statute prohibiting the use of certain obscene or profane language reached only speech unprotected by the First Amendment, and was therefore not unconstitutionally overbroad); *U.S. v. Simpson*, 741 F.3d 539, 551 (5th Cir. 2014) (court held statute prohibiting aiding and abetting the transmission of spam, with an intent to deceive or mislead, only reached speech unprotected by the First Amendment because it only applies to intentionally misleading commercial speech, and was therefore not unconstitutionally overbroad).

Second, it is not clear that Iowa's Ag-Fraud statute would apply to labor organizing activities because it is unlikely that an intent to engage in statutorily authorized conduct will satisfy the intent to harm element under the statute.  In any event, a narrowing construction from this Court could narrow Iowa's Ag-Trespass statute such that it would not apply to conduct authorized by law.  *See State v. Milner*, 571 N.W.2d 7, 13 (Iowa 1997) (stating a statute can be overbroad if a "court cannot narrow the statute to cover only unprotected speech").

Finally, the Ag-Trespass statute targets non-expressive conduct that does not warrant protection under the First Amendment.  In *United States v. Petrovic*, the court upheld an interstate stalking statute against an overbreadth challenge because it was "directed toward 'course[s] of conduct,' not speech, and the conduct it proscribe[d] [was] not 'necessarily associated with speech.'"  701 F.3d 849, 856 (8th Cir. 2012) (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)).  And punishing an individual for non-expressive conduct, even if he/she acts in order to ultimately engage in free speech, does not "'implicate[] the First Amendment.'"  *Cross v. Mokwa*, 547 F.3d 890, 896 (8th Cir. 2008) (quoting *Hicks*, 539 U.S. at 123).  In *Cross*, the court rejected a First Amendment challenge to a municipal ordinance brought by protestors who had been "arrested for illegally occupying a condemned building."  547 F.3d at 896.  The protestors were not arrested for protesting but for trespassing.  *Id.*  Just because the trespassing occurred incident to the protesting activities, it did not implicate the First Amendment.  *Id.*

Like the challenged statute and ordinance in *Petrovic* and *Cross*, the Ag-Trespass statute targets non-expressive conduct: using deception to obtain access to or employment at an agricultural production facility, with an intent to harm the facility's interests.  Engaging in this non-expressive conduct, even as part of a plan to engage in expressive conduct at a later date, clearly does not invoke First Amendment protections.

2.   Even if the Ag-Trespass Statute Criminalizes Protected, Expressive Conduct, the Statute does not Proscribe a Substantial Amount of Protected Speech in Relation to its Plainly Legitimate Sweep.

Plaintiffs attempt to increase the "breadth" of Iowa's Ag-Trespass statute by pointing to the different types of entities engaged in similar "undercover" investigations, rather than pointing to different types of protected speech proscribed by the statute.  Relying upon one example of protected speech proscribed by a statute is not sufficient to invalidate the statute as overbroad.

*Gerlich v. Leath*, 152 F.Supp.3d 1152, 1177 (citing *New York v. Ferber*, 458 U.S. 747, 772 (1982)) ("A law is not overbroad merely because one can think of a single impermissible application"). "Even where a statute at its margins infringes on protected expression, 'facial invalidation is inappropriate if the remainder of the statute covers a whole range of easily identifiable and constitutionally prescribable conduct.'" *United States v. McDermott*, 822 F. Supp. 582, 595 (N.D. Iowa 1993) (quoting *Ferber*, 458 U.S. at 770 n. 25).

Instead of proscribing a substantial amount of protected speech as Plaintiffs allege, Iowa's Ag-Trespass statute proscribes a substantial amount of conduct that is <u>not</u> protected by the First Amendment, including the use of deceit to trespass or obtain a job in order to: cause physical or economic damage or other injury to the facility and various interests associated with the facility; steal trade secrets or other business/operation information in order to injure the facility; obtain client or producer contact information in order to intimidate or persuade said clients/producers from contracting with the facility; interfere with the facility's bio-security protocols in order to injure the facility; and release or remove any animals from the facility. While this is not an exhaustive list, it is sufficiently broad enough to demonstrate the potential overbreadth, if any, of Iowa's Ag-Trespass statute would be insufficient to invalidate the statute, and in any event, a journalist caught up in a prosecution could always bring an as-applied challenge to any conviction. *See Golb v. Attorney General of the State of New York*, 870 F.3d 89, 102 (2nd Cir. 2017) (rejecting overbreadth challenge to criminal impersonation statute because the statute had a substantial legitimate sweep, and any alleged overbreadth could be raised in an as-applied challenge).

      3.  <u>Inclusion of the Term "Other Injury" in the Ag-Trespass Statute does not Render the Statute Overbroad.</u>

Plaintiffs also allege Iowa's Ag-Trespass statute is overbroad because it criminalizes the use of deception to gain access to an agricultural production facility with the intent to "cause some unspecified category of 'other injury,' which could lead to prosecution of a seemingly endless scope of conduct." *See* Complaint ¶ 123. The statute prohibits the use of deception with an intent to cause "physical or economic harm" as well as "other injury." Iowa Code § 717A.3B(1)(a) and (b). The term "other injury" then applies to a specific list of items that can be subject to "injury." *Id.*

The legislature has not defined "other injury," and where the legislature has not defined a term, courts can look to the dictionary, among other sources, to determine the definition of a term. *Bernau v. Iowa Dept. of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998). The dictionary defines "injury" as "an act that damages or hurts" or a "violation of another's rights for which the law allows an action to recover damages." *Injury Definition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/injury (last visited June 4, 2019). The term "other injury" is thus referring to a person's intent to cause some "damage" or "violat[e] another's rights" apart from a specific intent to cause "physical or economic harm."

One example could be where a person uses deceit to obtain access to or employment with an agricultural production facility in order to release livestock from the facility due to animal welfare concerns. There is no specific intent to cause "physical or economic harm;" the person simply wanted to free the animals. However, freeing the livestock—private property of another—violates that private property owner's rights and the law may allow an action to recover damages for the interference with those rights. Thus, the term "other injury" does not render Iowa's Ag-Trespass statute overbroad. In addition, to the extent the term "other injury" does

render the statute overbroad, the term can be severed from the statute as the remaining portion of the statute can be given effect without the invalid provision.  *See State v. Louisell*, 865 N.W.2d 590, 599 (Iowa 2015) ("Severing constitutionally infirm provisions is appropriate if it does not substantially impair the legislative purpose, if the enactment remains capable of fulfilling the apparent legislative intent, and if the remaining portion of the enactment can be given effect without the invalid provision") (internal citations and quotation marks omitted); Iowa Code § 4.12.

**C.**   **PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS STATUTE IS VOID FOR VAGUENESS IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS.**

Similar to their claim that Iowa's Ag-Trespass statute is overbroad, Plaintiffs also allege Iowa's Ag-Trespass statute is void for vagueness in violation of the First and Fourteenth Amendments because it criminalizes the use of deception to gain access to an agricultural production facility with the intent to  cause "other injury," arguing the statute is "so vague as to fail to provide adequate notice to individuals of what speech or conduct is prohibited."  *See* Complaint ¶ 143.  A statute is void for vagueness when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.  "Statutory terms meet this constitutional test if their meaning 'is fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning.'" *State v. Millsap*, 704 N.W.2d 426, 436 (Iowa 2005) (quoting *State v. Aldrich*, 231 N.W.2d 890, 894 (Iowa 1975)).  In considering whether the statute is unconstitutionally vague, "[courts] presume the statute is constitutional and give it any

reasonable construction necessary to uphold it." *Millsap*, 704 N.W.2d at 436 (internal citations omitted).

As previously set forth, the term "other injury" is referring to a person's intent to cause some "damage" or "violat[e] another's rights" apart from a specific intent to cause "physical or economic harm."  *See* Section B of this Brief at pp. 24-29.  And the "other injury" must be related to a specific list of interests—the agricultural production facility's "operations, agricultural animals, crop, owner, personnel, equipment, building, premises, business interest, or customer."  Iowa Code § 717A.3B(1)(a) and (b).  Consequently, in order to violate the statute, a person must use deceit to obtain access to or employment at an agricultural production facility, while harboring the specific intent to cause damage, other than physical or economic, to the facility or violate the rights of the facility's owner/operator or clients.  These are clear questions of fact; "[w]hether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'"  *Williams*, 553 U.S. at 306.

Although Plaintiffs did not provide any specific examples or hypotheticals in Count III of their Complaint to demonstrate the alleged "vagueness," to the extent Iowa's Ag-Trespass statute contains any vagueness as a result of the term "other injury," the "problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."  *Id*.  Close cases can be imagined under virtually any statute.  *Id*.  Moreover, in Iowa, "injury" is a term that is found in a plethora of criminal and civil statutes and judicial opinions where the types, degrees, and amount of "injury" are a determinative element of the outcome. Although some cases may be difficult, courts and juries in Iowa "every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than

evidence of their words and conduct, from which, in ordinary human experience, mental

condition may be inferred." *Id*. (quoting *American Communications Assn. v. Douds*, 339 U.S.

382, 411 (1950) (citing 2 J. Wigmore, Evidence §§ 244, 256 *et seq*. (3d ed.1940)).

In reviewing a vagueness challenge to the federal government's prohibition on the

promotion and possession of child pornography, the Supreme Court stated:

> What renders a statute vague is not the possibility that it will sometimes be
> difficult to determine whether the incriminating fact it establishes has been
> proved; but rather the indeterminacy of precisely what that fact is. Thus, we have
> struck down statutes that tied criminal culpability to whether the defendant's
> conduct was 'annoying' or 'indecent'—wholly subjective judgments without
> statutory definitions, narrowing context, or settled legal meanings.

*Id*. The Court also specifically noted that courts and juries often are called upon to evaluate the

statements of defendants to determine intent, including cases involving false representation. *Id*.

at 306-07 (stating the contention that the prohibition on promotion and possession of child

pornography provided the government with unfettered discretion had no more merit "than in the

case of laws against fraud, conspiracy, or solicitation").

Iowa's Ag-Trespass statute does not provide government officials "virtually unfettered

discretion" in its enforcement, and, accordingly, the term "other injury" does not render the

statute void-for-vagueness. In addition, to the extent the term "other injury" does render the

statute void-for-vagueness, the term can be severed from the statute as the remaining portion of

the statute can be given effect without the invalid provision. *See Louisell*, 865 N.W.2d at 599;

Iowa Code § 4.12.

**D.    PLAINTIFFS FAIL TO STATE A CLAIM THAT IOWA'S AG-TRESPASS
       STATUTE IMPOSES VIEWPOINT-BASED DISCRIMINATION IN
       VIOLATION OF THE FIRST AMENDMENT.**

Plaintiffs allege Iowa's Ag-Trespass statute is unconstitutional under the First

Amendment because it applies to a single industry—agricultural production—and by "singling

out the agricultural industry for protection against political speech that may be harmful to its profits," the statute is a viewpoint-based regulation of speech. Complaint ¶¶ 133-34. Plaintiffs' arguments are without merit and should be rejected. Even assuming the conduct prohibited by Iowa's Ag-Trespass statute is not exempt from the protections of the First Amendment, the statute is viewpoint neutral. There is no clear, discriminatory legislative purpose against a viewpoint under the statute, and the law is focused on prohibiting certain conduct of persons, irrespective of the message or political agenda of those persons. On its face, Iowa's Ag-Trespass statute does not discriminate between particular viewpoints; it prohibits deception without regard to the ideology or perspective of the speaker. *See ALDF I*, 297 F.Supp.3d at 926 (stating that on its face, Iowa's Ag-Fraud statute did not discriminate between particular viewpoints). Moreover, the Ninth Circuit addressed a similar argument in *Wasden* and concluded the statute did not create a viewpoint-based restriction. 878 F.3d at 1202 (holding the legislative purpose of the Idaho's Ag-Fraud statute cannot be said to have been "enacted solely to suppress a specific subject matter or viewpoint.")

Notwithstanding the foregoing, when states "single[] out a subset of messages for disfavor based on the views expressed," they are discriminating based on viewpoint. *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017). Plaintiffs' only sources of evidence for their allegation are three (3) legislators' statements on the bill that eventually became Iowa's Ag-Trespass statute. Complaint ¶¶ 59-61. Those legislators allegedly stated the Ag-Trespass statute was needed to: 1) prevent farmers from being "disparaged;" 2) to protect farmers from "extremism;" and 3) to protect agriculture from those who use "deceptive practices to distort public perception of best practices to safely and responsibly produce food." *Id.*

It is not clear from those legislators' statements that they harbored an intent to suppress the viewpoints of animal activists; there are no disparaging remarks from the legislators about said activists.  *Cf. ALDF I*, 297 F.Supp.3d at 926 (noting Plaintiffs' Complaint contained statements from legislators disparaging animal activists in connection with the proposed legislation).  Desiring to protect a particular industry, arguably vital to the State of Iowa, from those that would use deceptive practices to enter private property in order to harm the interests of said property owner does not equate to an intent to disfavor a subset of messages based upon their viewpoint.  *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (A legislature need not "strike at all evils at the same time or in the same way").

In any event, courts generally avoid looking past the facial validity of a statute to identify the statute's alleged true purpose.  *See Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir. 2013) (court declined to look past the facial neutrality of Michigan's prohibition on school districts' collection of membership dues for unions that represent public-school employees in a First Amendment challenge);  *see also Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 649-50 (7th Cir. 2013) (the court stated  they would not "peer[ ] past the text of the statute to infer some invidious legislative intention" of an otherwise viewpoint-neutral statute despite the "overtly partisan" statement of a legislator).  In both *Baily* and *Walker*, the courts relied upon the following sentence from *United States v. O'Brien*, 391 U.S. 367, 383 (1968): "[i]t is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."  *Bailey*, 715 F.3d at 960; *Walker*, 705 F.3d at 652.  The Supreme Court's rationale for this approach is that "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to

enact it, and the stakes are sufficiently high for us to eschew guesswork." *O'Brien*, 391 U.S. at 384.

Thus, even if the Iowa legislators' comments were meant to refer to animal rights activists, the Court should refrain from looking past the text of the Ag-Trespass statute—an otherwise viewpoint-neutral statute—to infer some invidious legislative intention. The inherent futility of undertaking such a motive-finding endeavor has been identified by the Supreme Court. *See O'Brien*, 391 U.S. at 384 ("We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it.")  Iowa's Ag-Trespass statute does not create a viewpoint-based restriction on speech in violation of the First and Fourteenth Amendments.

## IV.    CONCLUSION

Iowa's Ag-Trespass statute does not prohibit speech or conduct protected by the First Amendment.  Iowa's Ag-Trespass Statute is not overbroad or void-for-vagueness in violation of the First Amendment.  Finally, Iowa's Ag-Trespass statute does not create a viewpoint-based restriction in violation of the First or Fourteenth Amendments.  For these reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Respectfully submitted,

THOMAS J. MILLER
Attorney General of Iowa

   /s/  *Jeffrey S. Thompson*
JEFFREY S. THOMPSON
Solicitor General
jeffrey.thompson@ag.iowa.gov

   /s/  *Jacob J. Larson*
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov

Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone:  (515) 281-5164
Fax:  (515) 242-6771
ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, I electronically filed the foregoing

paper with the Clerk of Court by using the CM/ECF system.  All participants in this case are

registered CM/ECF users and will be served by the CM/ECF system.

**DATE:**  June 21, 2019

   /s/  *Jacob J. Larson*
JACOB J. LARSON
Assistant Attorney General
jacob.larson@ag.iowa.gov

Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone:  (515) 281-5164
Fax:  (515) 242-6771
ATTORNEY FOR DEFENDANTS