# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1830
_____

Animal Legal Defense Fund; Bailing Out Benji; Iowa Citizens for Community Improvement; People for the Ethical Treatment of Animals, Inc.; Center for Food Safety,

*Plaintiffs - Appellees*,

v.

Kimberly Reynolds, Governor of Iowa; Brenna Bird, Attorney General of Iowa[*]; Drew B. Swanson, Montgomery County, Iowa County Attorney,

*Defendants - Appellants*.

------------------------------

Iowa Pork Producers Association,

*Amicus on Behalf of Appellant(s)*,

First Amendment Scholars; United Farm Workers of America; 21 Media Organizations; Reporters Committee for Freedom of the Press; Iowa Freedom of Information Council,

*Amici on Behalf of Appellee(s)*.
_____

Appeal from United States District Court
for the Southern District of Iowa - Central

---

[*]Attorney General Bird is substituted for her predecessor under Federal Rule of Appellate Procedure 43(c).

_____

Submitted: September 20, 2023
Filed: January 8, 2024

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In *Animal Legal Defense Fund v. Reynolds*, 8 F.4th 781 (8th Cir. 2021) ("*ALDF I*"), this court considered an Iowa law that prohibited (1) accessing an agricultural production facility by false pretenses and (2) making a false statement or misrepresentation as part of an application for employment at such a facility. We concluded that the prohibition on accessing a facility by false pretenses did not violate the free speech clause of the First Amendment. But we ruled that the prohibition on making false statements in an employment application was insufficiently tailored and unconstitutional, because it encompassed statements that were not material to an employment decision.

A new Iowa law solves the materiality problem in the employment provision by forbidding the use of deception "on a matter that would reasonably result in a denial of an opportunity to be employed." The statute also narrows the scope of both prohibitions by adding an intent element: the law forbids the use of deceptive speech only when the person gains access or employment "with the intent to cause physical or economic harm or other injury" to the agricultural production facility. Iowa Code § 717A.3B(1)(a)-(b) (2019). After several organizations challenged the new law, the district court concluded that the intent requirement renders the law "viewpoint-based" and unconstitutional under the First Amendment. We respectfully disagree, and therefore reverse.

-2-

I.

The statute at issue in *ALDF I* concerned the offense of "agricultural production facility fraud." It provided, in relevant part:

> A person is guilty of agricultural production facility fraud if the person willfully does any of the following:
>
> a. Obtains access to an agricultural production facility by false pretenses.
>
> b. Makes a false statement or representation as part of an application or agreement to be employed at an agricultural production facility, if the person knows the statement to be false, and makes the statement with an intent to commit an act not authorized by the owner of the agricultural production facility, knowing that the act is not authorized.

Iowa Code § 717A.3A(1)(a)-(b) (2012).

In reviewing a challenge based on the First Amendment, we first determined that both provisions regulated speech. *ALDF I*, 8 F.4th at 784. But we construed the Supreme Court's splintered decision in *United States v. Alvarez*, 567 U.S. 709 (2012), to mean "that intentionally false speech undertaken to accomplish a legally cognizable harm may be proscribed." 8 F.4th at 786. We then concluded that trespass causes a legally cognizable harm, and that the State permissibly could proscribe false speech used to gain access to a facility.

On the employment provision, we assumed for the sake of analysis "that a narrowly tailored statute aimed at preventing false claims to secure offers of employment would pass constitutional muster." *Id.* at 787. But the statute at issue swept more broadly and plausibly covered immaterial fibs by an applicant who, for

-3-

example, "inflates his past attendance at the hometown football stadium." *Id.* We identified a "less restrictive means available: proscribe only false statements that are material to a hiring decision." *Id.*

While the appeal in *ALDF I* was pending, the Iowa General Assembly passed a new bill entitled "Agricultural Production Facility Trespass." The statute states, in relevant part:

> A person commits agricultural production facility trespass if the person does any of the following:
>
> a. Uses deception . . . on a matter that would reasonably result in a denial of access to an agricultural production facility that is not open to the public, and, through such deception, gains access to the agricultural production facility, with the intent to cause physical or economic harm or other injury to the agricultural production facility's operations, agricultural animals, crop, owner, personnel, equipment, building, premises, business interest, or customer.
>
> b. Uses deception . . . on a matter that would reasonably result in a denial of an opportunity to be employed at an agricultural production facility that is not open to the public, and, through such deception, is so employed, with the intent to cause physical or economic harm or other injury to the agricultural production facility's operations, agricultural animals, crop, owner, personnel, equipment, building, premises, business interest, or customer.

Iowa Code § 717A.3B(1)(a)-(b).

Several organizations sued various officials to enjoin enforcement of the new statute on the ground that it violated the free speech clause of the First Amendment.

The organizations alleged that but for the law, undercover investigators would use deception to gain access and employment at agricultural production facilities.

The district court ruled that both provisions violate the First Amendment. The court concluded that the law is viewpoint-based because the intent requirement in each provision targets speakers with negative views of agricultural production facilities. The court ruled that the provisions did not satisfy strict scrutiny, granted summary judgment for the plaintiffs, and enjoined officials from enforcing the law. The officials appeal.

II.

The challenged statute includes two provisions—an "Access Provision," Iowa Code § 717A.3B(1)(a), and an "Employment Provision," § 717A.3B(1)(b). Both regulate false or deceptive speech. This type of speech is not *per se* unprotected, but the State may proscribe "intentionally false speech undertaken to accomplish a legally cognizable harm." *ALDF I*, 8 F.4th at 786.

The Access Provision and the Employment Provision do just that. The Access Provision proscribes false speech used to commit a trespass. The harm flowing from trespass is legally cognizable. *Id.* The Employment Provision proscribes gaining employment through false speech on matters that are material to hiring. As the plurality in *Alvarez* explained, where false claims are made to secure offers of employment, "it is well established that the Government may restrict speech without affronting the First Amendment." 567 U.S. at 723 (plurality opinion).

The added wrinkle, however, is that the new Iowa statute adds an intent requirement that narrows the statute so that it proscribes fewer false utterances. A person is guilty of agricultural production facility trespass only if he gains access or employment "with the intent to cause physical or economic harm or other injury to

-5-

the agricultural production facility's operations, agricultural animals, crop, owner, personnel, equipment, building, premises, business interest, or customer." Iowa Code § 717A.3B(1)(a)-(b). The disputed issue is whether this intent requirement grafts an impermissible viewpoint-based restriction onto regulations that otherwise conform to the First Amendment.

Certain categories of speech may be proscribed without violating the First Amendment. Even so, a State may not proscribe speech within one of those categories based on its content or viewpoint. In *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Court held that an ordinance was content-based and subject to strict scrutiny when it forbade symbolic expression that "one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at 380, 391-92 (quoting St. Paul, Minn., Legis. Code § 292.02 (1990)). Although the ordinance regulated "fighting words," which may be proscribed, the law singled out a particular category of fighting words for punishment—those that "communicate messages of racial, gender, or religious intolerance." *Id.* at 394. The Court held that the ordinance was content-based and unconstitutional.

The rationale of *R.A.V.*, however, does not apply to regulation of conduct. States may single out, for example "bias-inspired conduct because this conduct is thought to inflict greater individual and societal harm." *Wisconsin v. Mitchell*, 508 U.S. 476, 487-88 (1993). In *Mitchell*, the Court upheld a sentencing enhancement for a defendant who intentionally selected a victim based on the victim's race, because the enhancement was "aimed at conduct unprotected by the First Amendment." *Id.* at 487.

Relying on *R.A.V.*, the organizations argue that the Iowa provisions single out certain false speech based on viewpoint. On that basis, they contend that the provisions are subject to strict scrutiny and are ultimately unconstitutional.

Consistent with our circuit precedent, we believe that *Mitchell* and its consideration of conduct regulations provide the appropriate mode of analysis. In *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996), we relied on *Mitchell* to conclude that a federal statute was not content-based or viewpoint-based when it prohibited threats of force against another "to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." *Id.* at 917 (quoting 18 U.S.C. § 248(a)(1)). The statute's motive requirement did not "transform" a regulation of true threats "into a content-based statute." *Id.* at 923. The motive requirement applied to all persons who obstructed access—whether they might be pro-life advocates or striking employees—"regardless of the message expressed" by the obstructors. *Id.* The motive requirement thus performed "the perfectly constitutional task of filtering out conduct" that the legislature did not believe should be criminalized, and permissibly focused the statute on acts that were "thought to inflict greater individual or societal harm." *Id.* (quoting *Mitchell*, 508 U.S. at 487-88).

The Iowa statute is likewise consistent with the First Amendment. Each provision permissibly forbids false statements that result in a legally cognizable harm. The law's reference to the content of speech (false statements) is constitutional because "the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable." *R.A.V.*, 505 U.S. at 388. As in *Dinwiddie*, the supplemental intent requirement does not distinguish among speakers based on their viewpoints. If a person uses deception to gain employment with intent to harm a facility, the offender would be liable for deceptively praising the facility ("I love the work you do, and I want to support it!") or deceptively criticizing the facility ("This facility is poorly managed, and I will help increase profits."). The statute does not prefer laudatory lies over critical falsehoods. *See Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1253 (10th Cir. 2021) (Hartz, J., dissenting).

The organizations argue that *Dinwiddie* is distinguishable because the motive requirement in the federal statute did not distinguish between different "types" of speakers. The statute, however, did distinguish between speakers who believed that a clinic should be accessible and those who did not. That distinction did not make the statute content-based or viewpoint-based: a statute is content-based if it regulates "speech based on its communicative content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). As with the statute at issue in *Dinwiddie*, the Iowa law regulates proscribable speech, but it does not impose further restrictions based on the speech's communicative content.

Our conclusion was foreshadowed by the Ninth Circuit in *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018). The court there held that a statute forbidding entry to an agricultural production facility by misrepresentation was not narrowly tailored. But in reaching that conclusion, the court suggested that the addition of an intent element could cure the constitutional infirmity: "We see no reason . . . why the state could not narrow the subsection by requiring specific intent or by limiting criminal liability to statements that cause a particular harm." *Id.* at 1198. The Iowa statute follows that guidance.

In urging a contrary conclusion, the organizations rely on two divided panel decisions from other circuits: *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219 (10th Cir. 2021), and *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023). *Kelly* held unconstitutional a statute that prohibited the use of deception to acquire control over an animal facility with intent to damage the business of the facility. The court concluded that the intent requirement covered "an intent to engage in protected speech advancing a specific viewpoint," and that the statute "criminalize[d] the inchoate desire to express a view where [the State] cannot criminalize the expression." 9 F.4th at 1242. *Brown* held that a statute forbidding the audiovisual recording of hunters on public lands, with intent to impede or obstruct lawful hunting, was an unconstitutional restriction on expressive conduct. The court reasoned that

the statute was viewpoint-based, because the intent provision required a court to consider a speaker's viewpoint in determining whether his expressive activity violates the statute. 86 F.4th at 781.

We are not persuaded by these decisions that the Iowa statute is unconstitutional. The intent element determines whether particular conduct violates the statute, but it does not mean that a violation turns on the viewpoint of an offender's deceptive speech. Rather, the intent requirement permissibly reflects "the general view that criminal punishment should be reserved for those who intend the harm they commit." *Kelly*, 9 F.4th at 1253 (Hartz, J., dissenting). The statute filters out trespassers who are relatively innocuous, and focuses the criminal law on conduct that inflicts greater harm on victims and society. In our view, the Iowa statute is not a viewpoint-based restriction on speech, but rather a permissible restriction on intentionally false speech undertaken to accomplish a legally cognizable harm.

\*   \*   \*

For these reasons, we reverse the judgment, vacate the injunction, and remand for further proceedings.

_____